IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PAUL W. ABBOTT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:20–CV–149 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.   Introduction

On November 28, 2016, the Chimney Tops 2 Fire ("Fire"), the largest wildfire in the Great Smoky Mountains National Park's ("Park") history, left the Park's boundaries, burned the surrounding areas, and led to tragic losses of life and significant property damage. The Fire and the events leading up to the Fire's movement outside of the Park are at the center of this case. The particular issues before the Court are whether the National Park Service ("NPS") was required to take mandatory, specific actions to notify particular groups about the Fire and to post information on available websites.

Whether the NPS and its employees were required to take mandatory, specific actions when responding to the Fire is significant because several groups of plaintiffs have brought lawsuits under the Federal Tort Claims Act ("FTCA") seeking compensation from the United States for its alleged negligence in handling the Fire. In response to the Complaint in this case, the United States filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and argued that it is immune from the lawsuits. This immunity, the United States argued, stems from the discretionary function exception to the FTCA. The discretionary function exception guards the United States against tort

1

claims arising from "legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). The United States has brought a facial attack to subject matter jurisdiction, which means the Court looks to the pleadings when ruling without taking evidence or making factual determinations.

This case is similar to other cases pending in this Court. *See Am. Reliable Ins. Co. v. United States*, — F. Supp. 3d —, 2020 WL 7042943, at *1 (E.D. Tenn. Nov. 24, 2020); *Reed v. United States*, 426 F. Supp. 3d 498, 501 (E.D. Tenn. 2019). In those cases, the United States' Motions to Dismiss were denied on the issues currently before the Court. This Court is not bound by those decisions, but it comes to the same conclusion.

The Court has thoroughly reviewed the record in this case, and for the reasons explained in more detail below, the United States' Motion to Dismiss, [Doc. 19], is DENIED.

## II.     Background

On November 23, 2016, a fire was discovered on one of the Chimney Tops in the Great Smoky Mountains National Park. [Doc. 1, PageID 13]. The Fire eventually grew beyond the Park's borders and burned the surrounding areas, leading to losses of life and significant property damage. [*Id.* at PageID 14]. Plaintiffs filed this lawsuit against the United States for its alleged negligence in handling the Fire and allege that the NPS and its employees failed to follow certain policies that required particular actions when responding to the Fire. [*Id.* at PageID 15–16]. Plaintiffs brought four claims against the United States in their Complaint: (1) Negligence-Failure to Monitor, (2) Negligence-Failure to Comply with Command-Structure Requirements, (3) Negligence-Failure to Adhere to Mandatory Fire Management Policies and Requirements, and (4) Negligence-Failure to Warn. [*Id.* at PageID 153, 157, 161, 175]. In its Memorandum of Law, the United States says that it has confirmed in writing that Plaintiffs are no longer pursuing their first three claims, [Doc. 19–

2

1, PageID 338], leaving only the fourth claim.[1] Addressing the fourth claim, the United States

analyzed the language of three documents to determine if the United States was required to take

mandatory action: Director Order #18, Reference Manual 18, and the Park's Fire Management

Plan ("FMP"). [*Id.* at PageID 350]. Plaintiffs filed a response to the United States' Motion, and

the United States replied. [Docs. 21, 23].

### III. Federal Torts Claim Act Overview and Motion to Dismiss Standard

The Federal Tort Claims Act allows lawsuits against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or
> wrongful act or omission of any employee of the Government while acting within
> the scope of his office or employment, under circumstances where the United
> States, if a private person, would be liable to the claimant in accordance with the
> law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988). However,

there are "exceptions to this broad waiver of sovereign immunity," including the discretionary

function exception. *Berkovitz*, 486 U.S. at 535; *see* 28 U.S.C. § 2680(a); *United States v. Gaubert*,

499 U.S. 315, 322 (1991). The discretionary function exception, 28 U.S.C. § 2680(a), covers:

> Any claim based upon an act or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation, whether or not such
> statute or regulation be valid, or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not the discretion involved
> be abused.

The Supreme Court has ruled that the discretionary function exception "marks the

boundary between Congress' willingness to impose tort liability upon the United States and its

desire to protect certain governmental activities from exposure to suit by private individuals."

*Berkovitz*, 486 U.S. at 535–36 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 808 (1984)).

---

[1] The United States asks the Court to dismiss the first three claims with prejudice; instead, the Parties should file a
Joint Stipulation dismissing the first three claims as neither Party filed documentation of their agreement.

The exception prevents "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . . " *Gaubert*, 499 U.S. at 323 (quoting *Varig Airlines*, 467 U.S. at 814).

The Supreme Court created a two-prong test to determine if the discretionary function exception applies. *Id.* at 328–32. The first prong is satisfied if the conduct in question was "'discretionary,' not 'controlled by mandatory statutes or regulations.'" *A.O. Smith Corp. v. United States*, 774 F.3d 359, 364 (6th Cir. 2014) (quoting *Gaubert*, 499 U.S. at 328)). That is, the conduct "in question must involve an element of judgment or choice, rather than follow a federal statute, regulation, or policy specifically prescribing a course of action and leaving the employee no rightful option but to adhere to the directive." *Id.* at 364–65 (quoting *Berkovitz*, 486 U.S. at 536) (internal quote omitted).

The second prong of the test is met if the use of discretion is "the kind that the discretionary function exception was designed to shield . . . ," meaning the use of discretion must be "susceptible to policy analysis." *Id.* at 365 (quoting *Berkovitz*, 486 U.S. at 536; *Gaubert* 499 U.S. at 325). If the conduct in question satisfies the first prong of the test, then there is a strong presumption that the second prong is satisfied. *Id.* The conduct in question must satisfy both prongs for the discretionary function exception to apply. *Id.* at 364–65.

The United States can assert immunity through the discretionary function exception by filing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See id.* at 359. A Rule 12(b)(1) motion can be a facial or a factual challenge to subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, the United States has brought a facial challenge, which "is a challenge to the sufficiency of the pleading itself." *Id.* When a challenge is based on the sufficiency of the pleadings, a court

4

accepts the material allegations in the pleadings as true and construes them "in the light most favorable to the nonmoving party." *Id.* When a facial attack to subject matter jurisdiction is brought, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

## IV.    Analysis

The analysis for a facial attack to subject matter jurisdiction under "the discretionary function exception has several steps." *Am. Reliable Ins. Co. v. United States*, — F. Supp. 3d —, 2020 WL 7042943, at *5 (E.D. Tenn. Nov. 24, 2020). The Court must first define the challenged conduct. *Id.* Then, it will "review the policies cited by Plaintiffs and determine if the policies gave the NPS discretion when making decisions—the first prong of *Gaubert.*" *Id.* If the first *Gaubert* prong is met, then the second prong is addressed. *Id.* Under the second prong, "the Court must determine if the decisions are the type of policy judgments that the discretionary function exception was designed to shield . . . . " *Id.*

In their Complaint, Plaintiffs rely on Directors Order 18, Reference Manual 18, and the Park's FMP when alleging that the NPS was required to notify specific groups about the Fire and to post fire related information on NPS websites and failed to do so. [Doc. 1, PageID 176]. In its Motion to Dismiss, the United States argues that those three documents did not require the NPS to take mandatory action. [Doc. 19–1, PageID 338]. Plaintiffs did not respond to the United States' arguments regarding Directors Order 18 and Reference Manual 18, leaving only the FMP to address. [Doc. 21].

5

1. Defining the Conduct

"When analyzing an issue under the discretionary function exception, 'the crucial first step is to determine exactly what conduct is at issue.'" *Am. Reliable Ins.*, 2020 WL 7042943, at *5 (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). The discretionary function exception is not a negligence inquiry, and the definition of the conduct should not create a test for negligence. *Id.* (citing *Rosebush*, 119 F.3d at 442). On the other hand, the conduct should not be defined overly broad as any conduct could be, at some level, discretionary. *Id.* (citing *Rosebush*, 119 F.3d at 442).With those considerations, the Court will define the conduct that the NPS and its employees allegedly did not perform as (1) notifying specific groups about wildland fires and fire management activities and (2) posting fire information on websites.[2] These definitions take into account the allegations in Count IV of the Plaintiffs' Complaint without introducing elements of negligence. With the conduct defined, the next step in the analysis is to determine if the policies cited by Plaintiffs required mandatory conduct or if the policies cited gave the NPS and its employees discretion. If the policies gave the NPS and its employees discretion, then the first prong of *Gaubert* would be satisfied.

2. The Fire Management Plan required the NPS and its employees to notify specific groups about wildland fires and fire management activities and to post fire information on websites, and *Gaubert's* first prong is not satisfied.

Plaintiffs cite to two sections of the FMP, Section 3.3.2 and Table 13 of Section 4.4.2, and claim that those sections required the NPS and its employees to perform specific, mandatory conduct and *Gaubert*'s first prong cannot be satisfied. [Doc. 21, PageID 369–71]. The United States argues that the first *Gaubert* prong is satisfied because the FMP as a whole does not require

---

[2] Plaintiffs in this case do not appear to rely on a portion of Table 13 in Section 4.4.2 requiring the use of an information officer and park public affairs as other Plaintiffs have. *See Am. Reliable Ins. Co. v. United States*, — F. Supp. 3d —, 2020 WL 7042943, at *10 (E.D. Tenn. Nov. 24, 2020)

6

mandatory conduct and because the sections of the FMP cited by Plaintiffs gives the NPS and its employees discretion. [Doc. 19–1, PageID 352].

For its first argument, the United States contends that the FMP cannot dictate mandatory conduct because the introduction to the document shows that "it was intended to express goals and provide guidance, and not to prescribe mandatory directives." [*Id.*]. The introduction states:

> This Fire Management Plan provides long-term direction for achieving park goals related to human safety and ecosystem management . . . . This plan outlines those actions that will be taken by Great Smoky Mountain National Park in meeting the fire management goals for the park . . . . [T]his plan will help achieve resource management objectives . . . .

[FMP, Doc. 1–7, PageID 448, *Reed v. United States*, 3:18–CV–201 (E.D. Tenn. May 23, 2018)][3]. Although this language does show that the FMP provides some goals and guidance, some language used, like "[T]his plan outlines those actions that will be taken . . . , " shows that portions of the FMP could be mandatory and not just guidance. *Am. Reliable Ins. Co.*, 2020 WL 7042943, at \*10 (citing *Reed*, 426 F. Supp. 3d 498, 508 (E.D. Tenn. 2019). Therefore, the United States' first argument fails.

Because the introduction is not conclusive about whether the FMP is entirely mandatory or discretionary, the Court will turn to the specific sections cited by Plaintiffs. Plaintiffs argue that Section 3.3.2 and Table 13 of Section 4.4.2 of the FMP require mandatory conduct. [Doc. 21, PageID 369–70]. These sections outline the NPS's role in notifying specific groups about fires in the Park. Section 3.3.2 states, "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities that have the potential to impact them." [Doc. 1, PageID 176; FMP, Doc. 1–7, PageID 468, *Reed v. United States*, 3:18–CV–201]. And Table 13 of Section 4.4.2 says, in part, that the Park is to "[p]ost current fire information on

---

[3] The Court sees no issue with the Parties citing the exhibits of other cases for consistent citation purposes, as the United States did here, but the Parties should ensure that all exhibits are in the record for each case.

websites as available," and "[i]nform park neighbors of wildland fires . . . . " [Doc. 1, PageID 176; Doc. 19–1, PageID 356; FMP, Doc. 1–7, PageID 498, *Reed v. United States*, 3:18–CV–201]. The United States argues that Section 3.3.2 and Table 13 of Section 4.4.2 do not require mandatory conduct, are not specific enough to dictate particular conduct, and incorporate an "if/then" logical structure that leaves room for discretion. [Doc. 19–1]. Because of this discretion, according to the United States, the first *Gaubert* prong is satisfied.

Contrary to the United States' first point, Section 3.3.2 and Table 13 of Section 4.4.2 require mandatory conduct. Section 3.3.2 does not give the NPS and its employees discretion to notify Park neighbors, Park visitors, and local residents about planned and unplanned fire management activities that could affect them; it just tells the NPS and employees to act. *Am. Reliable Ins. Co.*, 2020 WL 7042943, at *10. Similarly, Table 13 of Section 4.4.2 also requires mandatory conduct. *Id.* Table 13 does not give the NPS and its employees discretion in performing conduct, and it tells the NPS to post fire information on its websites and to inform park neighbors of wildland fires. These sections do not use any language that would give the NPS and its employees a choice.

Having determined that Section 3.3.2 and Table 14 of Section 4.4.2 do not give the NPS discretion, the United States next argues that even if the conduct is mandatory, the FMP gives discretion in how the conduct is performed. [Doc. 19–1, PageID 353]. The United States argues that the discretion is given "to Park officials to determine whether and when fire management activities have the potential to affect" the groups specified in the section and to "prescribe a course of action for the manner and timing Park Service officials must notify neighbors, visitors, and local residents." [*Id.*]. The United States also says that Table 13, Section 4.4.2 "states that the Park

8

Service is to post current information on websites 'as available' and does not specify the contents of the publications[,]" which gave the NPS and its employees discretion. [*Id.*].

In support of this argument, the United States cites to *Jude v. Commissioner of Social Security* from the Sixth Circuit. [*Id.* at PageID 356]. In *Jude*, the plaintiffs sued the United States and the Commissioner of Social Security under the FTCA for the wrongful death of family members who committed suicide after the Social Security Administration ("SSA") suspended the deceased's benefits. *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 155–56 (6th Cir. 2018). The SSA had suspended the benefits after learning that their attorney engaged in fraudulent practices, and the SSA needed to redetermine benefits. *Id.* at 156. After being sued, the United States raised the discretionary function exception to the FTCA. *Id.* at 157. The United States claimed that the Social Security Act ("Act") gave the SSA discretion in how to redetermine benefits after finding fraudulent activity, and the discretion was the kind meant to be protected by the discretionary function exception. *Id.* The district court agreed and dismissed the case on that basis. *Id.*

On appeal, the Sixth Circuit likewise agreed and ruled that the Act gave the SSA discretion to "exercise choice and judgment in fashioning a response that it deems appropriate." *Id.* at 160. The SSA had discretion because the Act and related regulations did not require the SSA to "fix an exact period" to notify and redetermine benefits after suspecting fraud, did not prevent the termination of benefits before a redetermination, and did not "mandate a certain period of time that beneficiaries must be given to collect new evidence to be used in the redeterminations." *Id.* Further, this analysis required "a plethora of factors in a situation that required some degree of operational flexibility." *Id.* at 161 (internal quotation omitted).

Applying *Jude* to this case, the United States argues that the same rationale shields it from liability because the FMP does not fix an exact point in time for when it had to act and did not

9

explicitly say how information needed to be posted or the content of those posts. [Doc. 19–1, PageID 356]. Although the United States is correct, there is no exact time down to the minute for when the NPS and its employees should take action or provide a list of necessary conduct, it does say when to act and what to post—when there is a fire and current fire information. *Am. Reliable Ins. Co.*, 2020 WL 7042943, at *11; *Reed*, 426 F. Supp. 3d at 510. While *Jude* supports the argument that the discretionary function exception could apply when a plethora of factors need to be considered, the FMP does not permit discretion like the SSA did. Section 3.3.2 and Table 13 of Section 4.4.2 do not provide room for consideration or an opportunity to apply factors; they just tell the NPS and its employees what to do.

Next, the United States argues that the FMP sections contain "if/then" logical structures that permit discretion under Sixth Circuit precedent found in *Myers v. United States*. [Doc. 19–1, PageID 356]. In *Myers*, the Sixth Circuit analyzed a policy that had an "antecedent assessment" and an "if/then" logical structure. *Myers v. United States*, 17 F.3d 890, 895 (6th Cir. 1994). The Sixth Circuit ruled that if a policy required an antecedent assessment that uses discretion for policies with an "if/then" logical structure, then the first *Gaubert* prong is satisfied. *Id.* at 895–896. The United States argues that the FMP policies contain "if/then" logical structures that allow Park employees to exercise judgment. [Doc. 19–1, PageID 355]. According to the United States, these "if/then" logical structures and antecedent assessments are found in phrases like "potential to impact" because an exercise in judgment is required to decide "who the relevant Park neighbors, Park visitors and local residents are for purposes of disseminating information about a specific fire management activity." [*Id.* at 355–56 (internal quotation omitted)].

Contrary to the United States' argument, Section 3.3.2 and Table 13 of Section 4.4.2 do not contain "if/then" logical structures with antecedent assessments. Section 3.3.2 does not provide

10

an opportunity to use judgment as it just provides requirements for action to be taken. *Am. Reliable Ins.*, 2020 WL 7042943, at *11. Likewise, Table 13 of Section 4.4.2 requires the NPS to post information on websites and inform park neighbors of wildland fires without an opportunity to use discretion or judgment. Further, these provisions are specific enough so that the NPS and its employees know what to do without any further definitions of the terms used, like, "Park neighbor" and "potential to impact." This analysis is consistent with other cases in which the Court held that these provisions "are specific as to when and how warnings should occur, namely, Park neighbors should be informed in the event of a wildland fire, using various means, including the internet and information officers." *Id.* (quoting *Reed*, 426 F. Supp. 3d at 510).

The United States also argues that the title of Section 4 of the FMP, "Wildland Fire Operational Guidance," shows that the Table 13, Section 4.4.2 is discretionary. [Doc. 19–1, PageID 354]. While the word "guidance" gives an inference of discretion, Table 13 of Section 4.4.2 is a policy that gives a mandatory directive. One word in a section title cannot make everything in Table 13 of Section 4.4.2 discretionary when it is written as a mandatory directive. *Am. Reliable Ins.*, 2020 WL 7042943, at *12.

Last, the Court, like it did in *American Reliable*, will briefly address two statements from the Sixth Circuit that conflict. In *Rosebush*, the Sixth Circuit ruled that "decision[s] whether to warn of potential danger is a protected discretionary function." *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1987). While the Sixth Circuit in *A.O. Smith*, "decline[d] to endorse" the position "that failure-to-warn claims categorically satisfy the discretionary function exception . . . ." *A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014). Regardless of how the Sixth Circuit resolves the conflicting statements, its decision will not require the United States' Motion to be granted. The conduct in this case is notifying specific groups about wildland fires and fire management activities and posting information on websites as directly required by

11

the FMP, not failing to warn. The issues in this case are different than the issue addressed by *Rosebush* because the *Rosebush* policies were written in general terms like, "To the extent practicable, eliminate safety hazards from recreation sites." *Rosebush*, 119 F.3d at 441. Because Plaintiffs pointed to specific actions that the NPS and its employees were required to perform instead of relying on policies written in more general terms, the Sixth Circuit's statement in *Rosebush* does not require this case's dismissal.

Having determined that Plaintiffs have identified provisions of the FMP that are specific and mandatory, the NPS and its employees was required to perform particular conduct, and *Gaubert*'s first prong is not satisfied. Considering both *Gaubert* prongs must be satisfied for the discretionary function exception to apply, the Court will not address the second prong, and the United States' facial attack on subject matter jurisdiction fails.

## V.    Conclusion

In conclusion, for the reasons stated above, the United States' Motion to Dismiss, [Doc. 19], is DENIED.

So ordered.

ENTER:

<div align="center" style="margin-left:auto">
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
</div>